IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAPITAL CENTRE, LLC,                    *

    Plaintiff,                          *

        v.                          *        Civil Action No.: RDB 04-182

DANIEL R. WILKINSON, SR.,                *

    Defendant.                          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM OPINION</u>

This action arises out of a two-Count Complaint filed by Capital Centre, LLC, a

Maryland limited liability company ("Capital Centre" or "Plaintiff") against Daniel R.

Wilkinson, Sr., a Virginia resident ("Wilkinson" or "Defendant").  The Complaint alleges that

Wilkinson—the purported agent of two companies, Dandar Enterprises, LLC, and A Big Daddy

Joint, LLC ("ABDJ")— negligently misrepresented that Dandar Enterprises, LLC, would

guarantee a lease between Capital Centre and ABDJ.  The Complaint also contends that

Wilkinson's misrepresentations require that he personally guarantee the lease and is

contractually liable.  Wilkinson denies these allegations and has filed a Counterlclaim

contending that Capital Centre negligently made misrepresentations to him regarding a proposed

hotel that Wilkinson hoped to construct on Capital Centre property.

Pending before this Court are four motions.  First, Plaintiff filed a Motion for Partial

Summary Judgment and, in the alternative, to Dismiss Affirmative Defenses for Failure to State

a Claim.  This motion seeks summary judgment on three issues: (1) liability with respect to

Count I of Plaintiff's complaint, (2) certain of Defendant's affirmative defenses, and (3)

Defendant's claims for punitive damages and attorney's fees.  It also contains a motion to strike

Defendant's jury demand, and (as an alternative argument) requests that Defendant's claims for punitive damages and attorney's fees be dismissed for failure to state a claim.  For reasons stated below, this motion is GRANTED with respect to Defendant's affirmative defenses, which fail as a matter of law.  In all other respects, however, this motion is DENIED.

The second outstanding motion duplicates the first and contains additional requests. Plaintiff's Motion for Summary Judgment and, in the alternative, to Dismiss Affirmative Defenses for Failure to State a Claim seeks summary judgment on four issues: (1) liability with respect to Count I of Plaintiff's complaint, (2) certain of Defendant's affirmative defenses, (3) Defendant's claims for punitive damages and attorney's fees, and (4) Defendant's Counterclaim. Like its predecessor, it also contains a motion to strike Defendant's jury demand, and (as an alternative argument) requests that Defendant's claims for punitive damages and attorney's fees be dismissed.  As explained below, summary judgment is GRANTED with respect to Defendant's Counterclaim.  In all other respects, however, this motion is DENIED.

The third pending motion is Defendant Wilkinson's Cross-Motion for Summary Judgment.  This motion seeks summary judgment with respect to Counts I and II of Plaintiff's Complaint and is DENIED for reasons explained below.  Finally, Plaintiff filed a Motion to Strike aspects of Defendant's Cross-Motion for Summary Judgment.  In light of the Court's other rulings, this motion is DENIED as moot.  The result of these motions is that this case will proceed to trial before a jury on the two-count Complaint brought by Capital Centre against Wilkinson.  The Court has jurisdiction under 28 U.S.C. § 1332.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).

<u>BACKGROUND</u>

**I.     Factual History.**

In early 2003, Wilkinson—who played professional football with the Washington Redskins from September 1997 to July 2003—contacted Capital Centre representative David Cordish about building a hotel at the Capital Centre shopping center in Landover, Maryland. Wilkinson met with Capital Centre representatives several times in March 2003 to discuss the proposed hotel.  Ultimately, the parties decided not to move forward with the hotel project.

In April 2003, Wilkinson and Capital Centre shifted their focus from building a hotel to constructing a restaurant/sports bar.  The proposal under consideration included making improvements to a site in the Capital Centre shopping center.  During negotiations, Capital Centre representative Michael Morris asked Wilkinson if he would personally guarantee a lease for the site where the restaurant/sports bar would be constructed.  (Compl. ¶ 7.)  Wilkinson refused but represented that another entity would guarantee the lease. (*Id*; Def's Mtn. pp. 10-11.) Wilkinson also represented that this entity had substantial assets.  (Compl. ¶ 7.)

In June 2003, these negotiations culminated in the execution of a lease agreement for approximately 9,143 square feet of improved real property at the Capital Centre shopping center (the "Lease").  (*See* Def's Mtn Ex. N.)  Capital Centre was the landlord.  A newly formed entity controlled by Wilkinson—a Big Daddy Joint, LLC ("ABDJ")—was the tenant.  Another entity allegedly controlled by Wilkinson—Dandar Enterprises, LLC—agreed to guarantee ABDJ's duties and obligations under the Lease.  The rent under the Lease amounted to approximately $115,000 per year and $9,583.33 per month.  (*Id*. at § 201(d).)  The Lease was to expire on January 31, 2071.  (*Id*. at § 306.)  Wilkinson executed the Lease on behalf of the tenant and

guarantor, and a security deposit was tendered in the amount of $12,447.78.  (*Id*.)

The Lease contains, *inter alia*, the following disclaimer of representations and integration clause:

> There are no oral agreements between the parties hereto affecting this Lease and/or the Premises, and this Lease supersedes and cancels any and all previous written or oral negotiations, arrangements, letters of intent, lease proposals, brochures, agreements, representations, promises, warranties and understandings between the parties hereto or displayed by Landlord to Tenant with respect to the subject matter thereof, and none thereof shall be used to interpret or construe this Lease. . . . Without limiting the foregoing, Tenant hereby expressly acknowledges that the Landlord Parties have made no representations, warranties, inducements or promises with respect to the Shopping Center or the Premises or this Lease or estimated Gross Sales or the number or kind of tenants in this Shopping Center except as herein expressly set forth.  Tenant acknowledges that prior to entering into this Lease, Tenant has satisfied itself of all its concerns, if any, by conducting an independent investigation into all prior information provided by (or statements made by) Landlord or its agents (including, without limitation, Landlord's Agent.).  . . .

(Def's Mtn. Ex. N, § 3401.)

In addition, the guaranty signed by Dandar Enterprises, LLC (the "Guaranty") contains a waiver of trial by jury:

> **GUARANTOR EACH [sic] HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY ON ANY OR ALL ISSUES ARISING IN ANY ACTION OR PROCEEDING BETWEEN LANDLORD AND GUARANTOR OR THEIR SUCCESSORS, ASSIGNS, PERSONAL OR LEGAL REPRESENTATIVES AND HEIRS UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY OF ITS PROVISIONS. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE [BY] GUARANTOR, AND GUARANTOR ACKNOWLEDGES THAT NEITHER LANDLORD NOR ANY PERSON ACTING ON BEHALF OF LANDLORD HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT[.] GUARANTOR ACKNOWLEDGES**

4

**THAT HE, SHE OR IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS LEASE WITH LEGAL COUNSEL.**

(Def's Mtn Ex. N, Guaranty.)  Both the Guaranty and Lease are governed by Maryland Law (*Id.*).

The Lease required ABDJ to provide Capital Centre with plans and specifications for improvements associated with the restaurant/sports bar on or before the "Tenant's Plans Due Date," *i.e.*, June 23, 2003:

> If Tenant shall fail to deliver Tenant's Plans to Landlord on or before the Tenant Plans Due Date or fails to respond to a submission of any plans by Landlord within one week after Landlord delivers same, such failure shall constitute an Event of Default under this Lease and the Fixturing Period set forth in Section 201(m) shall be reduced by one (1) day for each day after the Tenant Plans Due Date that Tenant fails to deliver Tenant's Plans to Landlord . . . Further, if Tenant has not delivered Tenant's Plans to Landlord within thirty (30) days after the Tenant Plans Due Date, then Landlord's Work as set forth in Exhibit C shall be null and void and Tenant shall be obligated to accept the Premises in "as is" condition upon Landlord's giving of Notice of Possession.

(Def's Mtn Ex. N, § 1401.)

ABDJ failed to provide the plans and specifications to Capital Centre within the required time frame.  In July 2003, moreover, the Washington Redskins traded Wilkinson to the Detroit Lions and, as a result, Wilkinson contacted Capital Centre to request that the Lease be terminated.  On August 11, 2003, Capital Centre asked ABDJ to provide the plans and specifications by August 22, 2003, and stated that "[t]he Lease has been assigned to Landlord's lender," and, although Capital Centre requested that the lease be cancelled, "the lender refused to permit the cancellation of the Lease."  (Def's Mtn Ex. Q.)  On August 22, 2003, Capital Centre informed ABDJ that it was terminating the Lease for ABDJ's failure to cure its defaults and stated that ABDJ "remains liable to Landlord for all monetary and other damages sustained by

Landlord. . . . ."  (Pl's Mtn p. 5.)

## II.    Procedural History.

On January 21, 2004, Plaintiff filed a two-count Complaint alleging that Defendant is

personally liable for the Lease and that Defendant negligently misrepresented certain facts to

Plaintiff.  The Complaint, which seeks approximately $31,500,000 in damages, does not demand

a jury trial.  On August 25, 2004, Defendant filed an Answer and Counterclaim alleging that

Plaintiff negligently misrepresented certain facts to Defendant.  The Answer and Counterclaim,

which seeks approximately $50,000,000 in damages, contain a demand for trial by jury "as to all

issues so triable."

The discovery process in this case resulted in sanctions.  On December 6, 2004, Plaintiff

filed a Motion to Compel responsive answers to interrogatories.  On April 26, 2005, this Court

ordered that Defendant provide responsive answers to an interrogatory requiring that Defendant

describe the factual basis for his Counterclaim damages.  On June 13, 2005, Plaintiff filed a

Motion for Imposition of Sanctions for Defendant's failure to comply with the Court's April 26

Order.  During a telephonic hearing on this matter, "Counsel for Wilkinson [] acknowledged that

Wilkinson had not prepared any proof of damages other than the brief replies to an

interrogatory."  Order, 8/4/05.  Accordingly, this Court ordered that Defendant "is barred from

offering damages evidence with respect to his counterclaim as a result of his failure to comply

with the Court's Order of April 26, 2005, that he provide a responsive answer to an interrogatory

on counterclaim damages."  *Id*.

Certain substantive or procedural motions have been resolved in this matter.  On August

4, 2004, this Court denied Defendant's Motions to Dismiss Complaint and Change Venue.  On

February 11, 2005, this Court denied Plaintiff's Motion to Strike Defendant's Jury Trial Prayer.

Finally, on April 26, 2005, this Court denied Plaintiff's Renewed Motion to Strike Jury Trial

Prayer.

Four motions are currently pending: On April 14, 2005, Plaintiff filed a Motion for

Partial Summary Judgment and, in the alternative, to Dismiss Affirmative Defenses for Failure to

State a Claim.  This motion seeks summary judgment on three issues: (1) liability with respect to

Count I of Plaintiff's complaint, (2) certain of Defendant's affirmative defenses, and (3)

Defendant's claims for punitive damages and attorney's fees.  It also contains a motion to strike

Defendant's jury demand, and (as an alternative argument) requests that Defendant's claims for

punitive damages and attorney's fees be dismissed.  For reasons stated below, this motion is

GRANTED with respect to Defendant's affirmative defenses, which fail as a matter of law.  In

all other respects, however, this motion is DENIED.

On July 1, 2005, Plaintiff filed a Motion for Summary Judgment and, in the alternative,

to Dismiss Affirmative Defenses for Failure to State a Claim.[1]  This motion seeks summary

judgment on four issues: (1) liability with respect to Count I of Plaintiff's complaint, (2) certain

of Defendant's affirmative defenses, (3) Defendant's claims for punitive damages and attorney's

fees, and (4) Defendant's Counterclaim.  Like its predecessor, it also contains a motion to strike

---

[1]      This Court notes that Plaintiff's Motion for Partial Summary Judgment and/or to Dismiss for Failure to State a Claim, filed on April 14, 2005, is subsumed by its Motion for Summary Judgment and/or to Dismiss for Failure to State a Claim, filed on July 1, 2005.  (*See*, *e.g.*, Status Report, 6/2/05, p. 3 (where Plaintiff represented that it would "file a modified version of its motion for partial summary judgment that was filed on April 14, 2005. . . ." ).)  The Court treats Plaintiff's motions to dismiss as motions for summary judgment because Plaintiff's arguments require that the Court consider matters outside the pleadings.  *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997).

Defendant's jury demand, and (as an alternative argument) requests that Defendant's claims for punitive damages and attorneys fees be dismissed for failure to state a claim.  As explained below, summary judgment is GRANTED with respect to Defendant's Counterclaim.  In all other respects, however, this motion is DENIED.

On July 19, 2005, Defendant filed a Cross-Motion for Summary Judgment.  This motion seeks summary judgment with respect to Counts I and II of Plaintiff's Complaint and is DENIED for reasons explained below.  Finally, on August 15, 2005, Plaintiff filed a Motion to Strike aspects of Defendant's Cross-Motion for Summary Judgment.  In light of the Court's other rulings, this motion is DENIED as moot.  The result of the Court's rulings is that this case will proceed to trial before a jury on the two-count Complaint brought by Capital Centre against Wilkinson.

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (emphasis added).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material.  *Id*. at 248.  Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant

submission of the matter to a jury for resolution at trial. *Id*. at 249. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

<u>DISCUSSION</u>

**I.    Plaintiff's Claims.**

**A.    Agency Claim (Count I)**.

Capital Centre's agency claim has two components.  The first component—which the parties do not dispute—concerns ABDJ's breach of its lease agreement with Capital Centre (the "Lease").[2]  The second component—which is disputed—concerns Wilkinson's personal liability for the duties and obligations of the guarantor of the Lease.

Capital Centre's argument for summary judgment with respect to Wilkinson's personal liability is as follows: (1) Dandar Enterprises, LLC agreed to guaranty the Lease (the "Guaranty"); (2) Dandar Enterprises, LLC is a nonexistent and fictitious principal; (3) Wilkinson executed the Guaranty as the purported agent of Dandar Enterprises, LLC; (4) the purported agent of a nonexistent or fictitious principal is personally liable under Maryland law for the contractual responsibilities of the nonexistent or fictitious principal; therefore (5) Wilkinson is personally liable for the Guaranty.  (*See generally* Pl's Mtn pp. 15-18.)

Wilkinson responds that the entity bound by the Guaranty is "Dandar Enterprises, Inc." not "Dandar Enterprises, LLC," and maintains that the use of "LLC" instead of "Inc." was a simple misnomer.  Wilkinson contends that, before the Lease and Guaranty were executed, he told Capital Centre representative Michael Morris that Dandar Enterprises, Inc was the entity

---

[2]    There is no dispute that ABDJ breached the Lease.  (*See*, *e.g.*, Def's Mtn p. 14 (noting without disputing that "Cap Centre alleges ABDJ failed to provide timely plans as required by section 1401 of the lease. . . . Cap Centre, in its motion for summary judgment, contends ABDJ breached the lease by failing to provide 'Tenant Plans' for the construction of a restaurant.").)  Similarly, the parties do not dispute that ABDJ's breach automatically triggered the guaranty.  (*Id.*)

bound by the Guaranty.  In addition, Wilkinson emphasizes that Dandar Enterprises, Inc.'s tax identification number was provided in the Guaranty and that a check from Dandar Enterprises, Inc. in the amount of $12,447.78 was tendered as the security deposit on the lease between ABDJ and Capital Centre.  Wilkinson maintains that due diligence by Capital Centre would have identified the misnomer and that Wilkinson never acted on behalf of a nonexistent or fictitious principal.  As a result, Wilkinson concludes that he cannot be held personally liable for the Guaranty as a matter of law.  (*See generally* Def's Mtn pp. 14-16.)

As the source of this Court's jurisdiction over this case is based on diversity of citizenship, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require application of the law of Maryland to questions of substantive law.  It is well-established in Maryland that if an agent fully discloses the fact that he is an agent and fully discloses the identity of his principal, the agent is not liable on the contract, and the principal is liable on the contract.  Conversely, if an agent does not make such disclosures, the agent is liable on the contract.  *See*, *e.g.*, *Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 653 (Md. Ct. Spec. App. 1985).  The agent is liable if the facts indicate a complete lack of disclosure or, alternatively, a partial or inaccurate disclosure.  *Id*.  A principal is partially disclosed "[i]f the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity."  *Hill v. County Concrete*, 672 A.2d 667, 670 (Md. Ct. Spec. App. 1996) (quoting *Restatement (Second) of Agency* § 4 (1958)).  A principal is undisclosed "[i]f the other party has no notice that the agent is acting for a principal."  *Id*.

A generally recognized exception to these agency principles is that a mere misnomer of a principal does not give rise to personal liability by the agent.  In *Curtis G. Testerman Co. v.*

*Buck*, the Court of Appeals of Maryland applied this exception to a contract executed in the name of "Curtis G. Testerman, Inc." instead of "Curtis G. Testerman Company."  The Court held that the use of "Inc." instead of "Company" was a misnomer that "is not sufficient to release the corporation from liability. . ." *Testerman*, 667 A.2d at 652.  In reaching this conclusion, the Court observed:

> We cannot allow the Bucks to use a simple misnomer in the corporate name to hold Testerman personally liable.  We believe that "[a] mistake in setting out the name of a corporation in an instrument is not fatal where the identity of the corporation is apparent."  7 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 3014, at 149 (perm. ed. rev. vol. 1988).  *See In re Goldville Mfg. Co.*, 118 F. 892, 896 (D.S.C. 1902) ("If the contract is expressed in writing and the identity of the corporation can be ascertained from the instrument itself, the misnomer is wholly unimportant."), *aff'd*, *William Firth Co. v. South Carolina Loan & Trust Co.*, 122 F. 569 (4th Cir. 1903).

*Id*. at 652 (citations omitted); *see also Hill*, 672 A.2d at 671 (noting that in "cases involving a mere misnomer, the parties proceeded in good faith with knowledge of the identity of the intended principal").

In this case, certain facts that are material to Wilkinson's disclosure of the identity of the guarantor are undisputed.  For example, the parties agree that the signature block to the Guaranty provides as follows:

WITNESS:                                GUARANTOR
(signature)                             Dandar Enterprises, LLC
                                        By: (signature) (SEAL)
                                        Tax Identification Number: 31-1531279
                                        Address:
                                        8936 Jeffrey Rd
                                        Grant Falls, VA 22066

(Def's Mtn Ex. N, Guaranty.)  The parties do not dispute that Wilkinson signed on behalf of the

12

guarantor, or that the Tax Identification Number provided in the signature block belongs to

Dandar Enterprises, Inc.  There is also no dispute that Wilkinson tendered a check from Dandar

Enterprises, Inc in the amount of $12,447.48 as a security deposit on the Lease.  Finally, there is

no question that the parties intended to contract with a corporate entity of some type, as opposed

to Wilkinson in his personal capacity.

However, there are genuine issues of material fact relating to the disclosure of the

guarantor.  In particular, Wilkinson asserts that he told Capital Centre that Dandar Enterprises,

Inc., not Dandar Enterprises, LLC, would act as the guarantor:

> Q.   Okay.  Let me focus on that then.  Dandar Enterprises, Inc.,
> you have a specific recollection of telling Mr. Morris that that
> was to be the guarantor entity?
>
> A.   In some of our general conversation, Dandar Enterprises, Inc.
> was always the company that I've used.
>
> Q.   Can you give me more specifics, when you believe you had
> this conversation with Mr. Morris?
>
> A.   Towards the — probably the latter end of any type of —
> when the guarantor conversations became real.  That exact
> date, I don't know.
>
> Q.   The lease is signed the 9th of June.  We are now about three
> weeks, May 15, before that time.  Am I to understand that you
> recall discussing Inc. as opposed to LLC with regard to
> Dandar Enterprises as the guarantor with Mr. Morris in this
> time horizon?
>
> A.   Yes, I believe I've done that.

(Def's Mtn Ex. A, pp. 114-15.)  Capital Centre, however, provides a declaration from Michael

Morris that directly contradicts this testimony:

> I had no knowledge that Wilkinson intended the guarantor entity to
> be anything other than Dandar Enterprises, LLC, as was typed on the

> guaranty at the time when Wilkinson signed it. . . . Wilkinson gave
> me the name Dandar Enterprises, LLC, in May of 2003 during our
> negotiation of the terms of the Lease.  At no time did he tell me that
> he intended the guarantor entity to be Dandar Enterprises, Inc., and
> at no time did he, or anyone acting on his behalf, advise me that the
> guarantor entity was incorrectly identified in the guaranty, and at no
> time was a request or demand made to me or to Capital Centre to
> amend the guaranty to identify the guarantor as Dandar Enterprises,
> Inc.

(Pl's Reply Ex. A.)

Another material dispute concerns alleged representations that Wilkinson made as the agent for the guarantor.  Capital Centre has provided a declaration from Michael Morris contending that in May 2003 Wilkinson told Mr. Morris that he owned a holding company called Dandar Enterprises, LLC, and that this entity had a net worth of approximately $13 million.[3] While Wilkinson does not acknowledge this specific representation, he "does not contend there exists and he is unaware of an entity known as 'Dandar Enterprises, LLC.'"  (*See* Pl's Reply p. 12.)  Wilkinson also does not dispute that Dandar Enterprises, Inc., had no assets in April and May of 2003.  (*See* Def's Mtn Ex. A, pp. 104-05 ("Q. To the best of your recollection, as of April of — and May of 2003, did Dandar Enterprises, Incorporated have actual concrete assets? A. No.").)  This particular dispute may prove significant because, if it is resolved in Capital Centre's favor by the trier of fact, then it suggests that Wilkinson's alleged disclosure of Dandar Enterprises, LLC, during precontractual negotiations was not a simple mistake.

In sum, the evidence forecast by the parties demonstrates a genuine issue of material fact

---

[3]    Capital Centre incorporates this Declaration into its moving papers by referring to papers filed earlier in this matter.  (*See* Pl's Reply p. 15 n. 17 (Referring to the "June 1, 2005 Declaration of Michael Morris at ¶ 3 attached as Exhibit 6 to Capital Centre's motion to compel non-party deponent Dandar Enterprises, Inc., to produce documents and to provide testimony filed June 1, 2005, as Paper No. 60, and incorporated herein by reference.").)

with respect to whether Wilkinson, as the agent of the guarantor, disclosed the identity of his principal to Capital Centre. A reasonable jury could credit Wilkinson's version of events to find that the use of "LLC" instead of "Inc." was a mere misnomer. By the same token, a reasonable jury could credit Capital Centre's version of events to find that Wilkinson did not fully disclose the identity of the guarantor. Accordingly, the parties' cross-motions for summary judgment with respect to Count I of Capital Centre's Complaint are DENIED. *Cf. Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 623-26 (D. Md. 2003) (denying motion for summary judgment after finding that defendant could be liable on the contract despite use of apparent misnomer).

This Court notes that Capital Centre's papers refuse to recognize the misnomer exception to the undisclosed principal rule, and steadfastly maintain that Wilkinson is personally liable "as a matter of black-letter law." For example, Capital Centre interprets *Odyssey v. RO Cruises* as applying "Maryland's law of agency to *impose* liability on an agent who argued that it created, at worst, a 'misnomer' in identifying its principal as 'Royal Olympic Cruises,' an entity which did not exist, rather than 'Royal Olympic Cruises, Ltd.'" (Pl's Reply p. 4 (emphasis added).) The Court in *Odyssey*, however, did not impose liability on the Defendant. *See Odyssey*, 262 F. Supp. 2d at 626 ("Because it failed to disclose fully its principal, Defendant ROC *can* be held liable on the contract, and Defendant's motion for summary judgment will be denied as to Count I.") (emphasis added). As a result, Capital Centre is simply mistaken when it suggests that *Odyssey* requires that "even if Wilkinson's contention, that he signed the Guaranty, which said 'LLC,' is credited, Wilkinson is, nonetheless, personally liable on the guaranty as the guarantor." (Pl's Reply pp. 4-5.)

The analysis presented by Wilkinson is equally problematic.  Wilkinson's primary argument for summary judgment in his favor is that "[t]o maintain a breach of contract claim against Wilkinson, individually, Cap Centre must first prevail on its negligent misrepresentation claim because Wilkinson in his individual capacity signed neither the lease nor guaranty."  (Def's Mtn, p. 5.)  Capital Centre's agency claim, however, simply does not depend on its claim for negligent misrepresentations as the causes of action are distinct.  *Compare Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 652-53 (Md. Ct. Spec. App. 1985) (describing elements of agency claim) *with Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982) (describing elements of negligent misrepresentation claim).  Moreover, the decisions cited by Wilkinson neither discuss nor establish a dependency between agency and negligent misrepresentation claims.[4]  Accordingly, for the reasons stated above, the parties' cross-motions for summary judgment with respect to Count I of Capital Centre's Complaint are DENIED.[5]

### B.    Plaintiff's Claim of Negligent Misrepresentation (Count II).

---

[4]    *See Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462 (D. Md. 2002) (discussing basic contract principles); *Copies Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 322-25 (D. Md. 1983) (discussing basic contract principles and noting that "an agency relationship may also arise out of the specific circumstances underlying the contract at issue"). Wilkinson cites to another decision—*Circuit City Stores, Inc. v. Rockville Pike Joint Venture Ltd. P'ship*, 372 Md. 763 (Md. 2003)—that is unreported and was not provided to this Court. *See* Local Rule 105.5 (D. Md. 2004) (requiring that parties provide unreported decisions to the Court).

[5]    This Court notes that the parties chose not to discuss the results of discovery taken on Dandar Enterprises, Inc.  (*See* Status Report, 6/2/05, p. 2 (where Capital Centre represented that, in light of such discovery, it would "move to amend its complaint to add Dander Enterprises, Inc., as an additional defendant, and to add a third count to the complaint against both Defendant Wilkinson and Dandar Enterprises, Inc., for fraud.").)  *Cf. Odyssey*, 262 F. Supp. 2d at 630-31 (denying plaintiff's motion for leave to file an amended complaint under similar circumstances).

Wilkinson moves for summary judgment on Capital Centre's claim for negligent misrepresentation.  (*See* Compl. ¶ 14 (alleging that Wilkinson negligently misrepresented to Capital Centre "that Dandar Enterprises, LLC, was a limited liability company which held ownership of substantial assets. . . .").)   Wilkinson bases this motion on two grounds: (1) no reasonable jury could find that Wilkinson made any false statements to Capital Centre; and (2) Wilkinson did not owe a duty to Capital Centre.  (*See* Def's Mtn pp. 33-34.)[6]

Under Maryland law, to prevail on a claim of negligent misrepresentation, a plaintiff must establish that: (1) the defendant, owing a duty of care to plaintiff, negligently asserts a false statement; (2) the defendant intends that the plaintiff will act on the statement; (3) the defendant knows that the plaintiff will probably act on the statement which, if erroneous, will cause loss or injury; (4) the plaintiff justifiably takes action in reliance on the statement; and (5) the plaintiff suffers damages proximately caused by the defendant's negligence.  *See*, *e.g.*, *Martens Chevrolet*, 439 A.2d at 539.

Wilkinson's first ground for summary judgment is his denial of any statements to Capital Centre.  This is a matter of factual dispute.  As already noted, Capital Centre has provided a declaration from Michael Morris contending that in May 2003 Wilkinson told Mr. Morris that he owned a holding company called Dandar Enterprises, LLC, and that this entity had a net worth of approximately $13 million.  Although Wilkinson does not acknowledge making these

---

[6]     Capital Centre—who has not moved for summary judgment on its negligent misrepresentation claim—characterizes that claim as "an alternative liability theory which Capital Centre pursues only if it is required to try the issue of Wilkinson's liability because the Court concludes that a material issue of fact exists as to liability on Capital Centre's breach-of-contract cause of action."  (Pl's Reply p. 11.)  Capital Centre requests, moreover, that if summary judgment is granted in its favor with respect to its agency or "breach-of-contract" cause of action, this Court dismiss its claim for negligent misrepresentations.  (*Id*. at p. 16.)

particular representations, Wilkinson concedes that Dandar Enterprises, LLC, does not exist and that Dandar Enterprises, Inc., had no assets in April and May of 2003.  *See* DISCUSSION § I.A, *supra* (discussing material dispute concerning alleged representations that Wilkinson made as agent for guarantor).  In light of these factual issues, Wilkinson's statements to Capital Centre during precontractual negotiations simply cannot support the entry of summary judgment in Wilkinson's favor on Capital Centre's negligent misrepresentation claim.

Wilkinson's second ground for summary judgment—the absence of a duty owed to Capital Centre—requires further analysis.  In cases that involve only economic harm, as here, the plaintiff must establish an "intimate nexus" with the defendant to establish a duty.  *Jacques v. First Nat'l Bank*, 515 A.2d 756, 759-60 (Md. 1986).  As this Court has previously explained:

> The intimate nexus can be established by showing contractual privity or its equivalent.  *Id*.  Arms-length negotiations between representatives of commercial entities do not establish an intimate nexus unless "they invoke considerations of personal trust and reliance."  *21st Century Props. Co. v. Carpenter Insulation & Coatings Co.*, 694 F. Supp. 148, 154 (D. Md.1988).

*Sagent Tech., Inc. v. Micros Systems, Inc.*, 276 F. Supp. 2d 464, 471 (D. Md. 2003) (citations omitted); *see also Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 763 F. Supp. 1327, 1333 (D. Md. 1991), *aff'd in relevant part*, 991 F.2d 94 (4th Cir. 1992).

Maryland courts have held that a duty to exercise reasonable care in making representations may arise out of precontractual negotiations that result in the formation of a contract.  In *L & P Converters, Inc. v. Alling & Cory Co.*, 642 A.2d 264 (Md. Ct. Spec. App. 1994), the Court of Special Appeals found that an "intimate nexus" was established between a broker of paper goods and a paper converter.  During precontractual negotiations for a contract to purchase paper, the broker specifically asked the converter if its paper met certain

18

specifications. *Id*. at 268.  After receiving express representations that the specifications were

satisfied, the broker purchased a large amount of paper that was too rough, too yellow, and the

wrong weight.  *Id*. at 266.  The court found that "those facts were sufficient to support a

determination that an intimate nexus or special relationship existed between the parties so as to

permit the imposition of a duty of care."  *Id*; *see also Martens Chevrolet*, 439 A.2d at 539

(evidence sufficient to submit claim to jury where misrepresentations made during

precontractual negotiations for contract involving sale of automobile distributorship); *Weisman*

*v. Connors*, 540 A.2d 783, 793-94 (Md. 1988) (finding that false statements made during

precontractual discussions involving an employment contract established a relationship that was

sufficient to impose a tort duty of care); *see also Giant Food v. Ice King*, 536 A.2d 1182, 1185

(Md. Ct. Spec. App. 1988) (finding that a special relationship sufficient to impose a tort duty of

care existed between potential supplier and buyer by virtue of their communications over a

period of seven months), *cert. denied*, 542 A.2d 844 (Md. 1988).[7]

Wilkinson contends that *Silver Hill Station Ltd. P'ship v. HAS/Wexford Bancgroup, LLC*,

---

[7]        Although tort duties such as the one at issue here are traditionally "imposed by
courts to protect a peculiarly vulnerable party," *Martin Marietta*, 763 F. Supp. at 1333, Maryland
courts have, in the context of misrepresentations made during precontractual negotiations
between parties that appear sophisticated, allowed negligent misrepresentation claims to proceed.
*See L & P Converters*, 642 A.2d at 266 (describing precontractual negotiations between broker
of paper goods and paper converter); *Martens*, 439 A.2d at 536 (describing precontractual
negotiations between businessmen and automobile dealership; noting that businessmen
employed accountant during those negotiations); *Weisman*, 540 A.2d at 785 (party asserting
negligent misrepresentation claim, an executive vice-president with Ford Motor Company,
showed precontractual letter to family lawyer and employed another lawyer to draft employment
contract); *see also Giant Food*, 536 A.2d at 1185-86 (describing negotiations between ice
manufacturer and grocery store chain); *Greenfield v. Heckenbach*, 797 A.2d 63 (Md. Ct. Spec.
App. 2002) (holding that general integration clause and disclaimer of representation clause does
not bar an action for negligent misrepresentation), *cert. denied*, 805 A.2d 266 (2002).

158 F. Supp. 2d 631 (D. Md. 2001) and *G & M Oil Co. v. Glenfed Financial Corp.*, 782 F. Supp.

1085 (D. Md. 1991), *aff'd*, 947 F.2d 940 (4th Cir. 1991) require that no duty could be imposed

on Wilkinson.  Those cases, however, are distinguishable from the one at hand.  Both *Silver Hill*

and *G & M Oil* involved discussions between lenders and prospective borrowers that did not

result in the formation of any contract.  As a result, the Court faced the narrow question whether

"a lender owes a duty of care in *processing* a prospective borrower's loan application or a

fiduciary duty to the borrower to refrain from making careless statements *regarding the status* of

the loan application."  *Silver Hill*, 158 F. Supp. 2d at 636 (emphasis added); *see also G & M Oil*

*Co.*, 782 F. Supp. at 1089.  In resolving that question, the Court focused on whether any "special

factors" existed—*e.g.*, would the borrower be exposed to any unusual or extraordinary risk if the

deal fell apart—to support a finding of an intimate nexus or special relationship.  In contrast, this

case involves precontractual discussions that resulted in the formation of a contract.  The special

circumstances attending whether lenders owe duties to prospective borrowers simply do not

apply.  *Cf. L & P Converters*, 642 A.2d at 266; *Martens Chevrolet*, 439 A.2d at 539 (Md. 1982);

*Weisman*, 540 A.2d at 793-94; *Giant Food*, 536 A.2d at 1185.

 In this case, Capital Centre has forecast evidence that would allow a reasonable jury to

conclude that an intimate nexus or special relationship existed between Capital Centre and

Wilkinson.  It is undisputed that Wilkinson and Capital Centre engaged in precontractual

negotiations that resulted in an agreement to lease approximately 9,143 square feet of improved

real property at the Capital Centre shopping center.  There is also no dispute that, during those

negotiations, Capital Centre specifically asked Wilkinson if he would personally guarantee the

Lease.  After refusing this request, Wilkinson acknowledges that he represented to Capital

Centre that another entity would guarantee the lease.  (*See* Def's Mtn. pp. 11-12.)  Although material disputes exist with respect to the specific representations that Wilkinson made to Capital Centre, *see* DISCUSSION § I.A, *supra*, this Court finds that, viewing the facts in the light most favorable to Capital Centre, a reasonable jury could conclude that an intimate nexus or special relationship sufficient to impose a tort duty of care existed between Capital Centre and Wilkinson.  Accordingly, Wilkinson's motion for summary judgment with respect to Count II of Capital Centre's Complaint is DENIED.[8]  *See generally Griesi v. Atlantic General Hosp. Corp.*, 756 A.2d 548, 554 (Md. 2000) ("Maryland has found the equivalent of contractual privity in special relationships consummated during the course of pre-contract negotiations."); *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045 (Md. Ct. Spec. App. 2002) ("In determining whether the duty exists to support negligent misrepresentation, a significant factor is whether the promises were an inducement to the plaintiff and provided the defendant with a business advantage when the plaintiff acted in conformance with them.") (citations omitted), *cert. denied*, 818 A.2d 1105 (Md. 2003).

---

[8]     This Court notes that the Lease contains a general integration and disclaimer of representations clause that appears to cover Wilkinson's alleged misrepresentations.  (*See* Def's Mtn Ex. N, § 3401 ("There are no oral agreements between the parties hereto affecting this Lease and/or the Premises, and this Lease supersedes and cancels any and all previous written or oral negotiations, arrangements, letters of intent, lease proposals, brochures, agreements, representations, promises, warranties and understandings between the parties hereto. . . . ).)  In *Greenfield*, 797 A.2d 63, however, the Maryland Court of Special Appeals held that a *general* integration clause will not bar a claim of negligent misrepresentation where that clause does not *specifically* disclaim liability for certain assurances.  The court based its decision on a "policy of encouraging honesty and candor in contract negotiations" and noted that "[t]he implied covenant of good faith and fair dealing would virtually be eliminated if a contracting party could escape liability for negligent conduct simply by inserting a general integration cause into the agreement."  *Id*. at 81 (citation omitted).  Accordingly, the general integration and disclaimer of representations claims in the Lease does not bar Capital Centre's negligent misrepresentation claims under Maryland law.

**II.       Defendant's Counterclaim**.

Wilkinson contends that Capital Centre negligently misrepresented that it would "prepare a letter of intent concerning [Defendant Wilkinson's] intent to build and operate a hotel on the Capital Centre site," that "as a condition for favorable consideration of the hotel, [Defendant Wilkinson] would have to lease space at the Capital Centre site to operate a restaurant and sports bar," and that "the Arena Drive exit from Interstate 495 on the Capital Beltway would soon be open to all vehicular traffic."  (Counterclaim ¶¶ 40-43.)

Wilkinson's Counterclaim fails as a matter of law because Wilkinson cannot prove an essential element of his negligent misrepresentations claim, *i.e.*, damages.  As noted above, after repeated warnings, the following sanction was imposed on Wilkinson for failing to comply with a discovery order issued by this Court:

> Counter-Plaintiff Wilkinson is barred from offering damages evidence with respect to his counterclaim as a result of his failure to comply with the Court's Order of April 26, 2005, that he provide a responsive answer to an interrogatory on counterclaim damages.

Order, 8/5/05, p. 1; *see also* BACKGROUND § II, *supra*.  Damages is an essential element of any negligence claim under Maryland law, including a claim for negligent misrepresentation.  *See Peroti v. Williams*, 267 A.2d 114, 118 (Md. 1970) ("[A]ctual damages are a prerequisite for liability in negligence cases, and nominal damages, or 'technical liability' do not exist."); *Martens Chevrolet*, 439 A.2d at 539 (to prevail on a claim of negligent misrepresentation, a plaintiff must establish, *inter alia*, that the plaintiff suffers damages proximately caused by the defendant's negligence).  Accordingly, because Wilkinson cannot prove an essential element of his claim for negligent misrepresentation, Capital Centre's motion for summary judgment with

respect to Wilkinson's Counterclaim is GRANTED.[9]

### III.   Defendant's Affirmative Defenses.

Capital Center moves for summary judgment or, in the alternative, to dismiss for failure to state a claim with respect to four of the ten affirmative defenses asserted by Wilkinson in his Answer.  Wilkinson has conceded that three of those defenses—lack of subject-matter jurisdiction, insufficiency of service of process, and statute of limitations—are without factual support:

> **Interrogatory No. 12**:  State the facts upon which you base your Second Affirmative Defense, at Paragraph 16 of your Answer, in which you allege that: "This Court lacks jurisdiction over the subject matter of this action."
>
> **Response**: It appears the Court has subject matter jurisdiction.
>
> **Interrogatory No. 13**: State the facts upon which you base your Third Affirmative Defense, at Paragraph 17 of your Answer, in which you allege that: "The service of process on Wilkinson was insufficient."
>
> **Response**: It appears service of process was proper.
>
> *   *   *
>
> **Interrogatory No. 16**: State the facts upon which you base your Sixth Affirmative Defense, at Paragraph 20 of your Answer, in which you allege that: "The plaintiff's claim is barred in whole or in part by the applicable statute of limitations."
>
> **Response**: It appears this action is not barred by the applicable statute of limitations.

(Pl's Mtn. p. 30.)  Wilkinson offers no response to Capital Centre's motion for summary

---

[9]    In light of this Court's ruling, Capital Centre's motion for summary judgment or, in the alternative, to dismiss Wilkinson's demand in his Counterclaim for punitive damages and attorneys' fees is DENIED as moot.

judgment on the three defenses discussed above.  Accordingly, this Court finds that Wilkinson

has failed to demonstrate any genuine issue of material fact with respect to lack of subject-matter

jurisdiction, insufficiency of service of process, and the applicable statute of limitations.  As a

result, these affirmative defenses fail as a matter of law.  *See, e.g.*, *Celotex*, 477 U.S. at 322;

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (nonmoving

party must set forth specific facts demonstrating a genuine issue of trial to resist summary

judgment); Fed. R. Civ. P. 56(e).

The other defense put at issue by Capital Centre's motion is equally problematic.  The

only explanation provided by Wilkinson in connection with his "waiver and estoppel" defense is

as follows:

> **Interrogatory No. 15**: State the facts upon which you base your Fifth
> Affirmative Defense, at Paragraph 29 of your Answer, in which you
> allege that: "This action is barred by the doctrines of waiver and
> estoppel."
>
> **Response**: Plaintiff should be estopped from maintaining this action,
> given the misrepresentations plaintiff made to Wilkinson.

(Pl's Mtn. p. 31.)  Capital Centre has pointed out in its moving papers that no factual basis exists

for this defense. (*Id*. pp. 31-32.)  In response, Wilkinson failed to come forward with specific

facts to support this defense.  (*See* Def's Reply p. 22 (stating only that "questions of waiver and

estoppel are factual to be decided by the trier of fact.").)  In addition, Wilkinson's claim for

negligent misrepresentation fails as a matter of law and therefore cannot serve as a basis for his

estoppel defense.  *See* DISCUSSION § II, *supra*.  Accordingly, Wilkinson has failed to demonstrate

a genuine issue of material fact with respect to the affirmative defense of waiver and estoppel,

and this defense also fails as a matter of law.  *Celotex*, 477 U.S. at 322; *Bouchat*, 346 F.3d at

525; Fed. R. Civ. P. 56(e).

## IV.   Defendant's Jury Demand.

Capital Centre argues that Wilkinson is bound by the broad jury-trial waiver contained in the Guaranty, *see* BACKGROUND § I, *supra*, and therefore moves to strike Wilkinson's request for a jury trial "as to all issues so triable."  (Answer and Counterclaim p. 9.)   At earlier stages in this litigation, the Court denied this same request, finding that Capital Centre "has not borne its burden of proof on [this] question" and that its "motion to strike the defendant's prayer for jury trial is predicated upon facts which remain in dispute."  Memorandum Opinion, 2/11/05, pp. 4-5; *see also* Order, 4/27/05 (denying renewed motion to strike jury demand).  For the reasons stated below, this Court again finds that Capital Centre has failed to establish that Wilkinson knowingly and intelligently waived his right to a trial by jury.

The Supreme Court has clearly established that "[t]he right to a jury trial in the federal courts is to be determined as a matter of law in diversity as well as other actions."  *Simler v. Conner*, 372 U.S. 211, 222 (1963).[10]  In that case, the Supreme Court noted that the federal policy favoring jury trials is "of historic and continuing strength."  *Id.*; *see also First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 662 (E.D. Pa. 2001).  This Seventh Amendment right "is not only a fundamental one, but it is one that can be knowingly and intelligently waived by contract."  *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986).  However, it is well recognized that the right to a jury trial is so fundamental that courts "will indulge every reasonable presumption against a waiver of that right."  *See* 9 Charles Alan Wright & Arthur R.

---

[10]      The right to a jury trial is guaranteed by the Seventh Amendment of the United States Constitution, which provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

Miller, *Federal Practice and Procedure* § 2321, 163 (2d ed. 1995) (collecting cases).  In light of

this presumption, it has been held that the burden of proving that a jury trial has been waived is

upon the party seeking to enforce the waiver.  *See*, *e.g.*, *Leasing Serv. Corp.*, 804 F.2d at 833;

*Luis Acosta, Inc. v. Citibank, N.A.*, 920 F. Supp. 15 (D. P.R. 1996).

After carefully reviewing the parties' submissions, this Court finds that Capital Centre

has failed to meet its burden of proving that Wilkinson knowingly and intelligently waived his

right to a jury trial.  There is no dispute that Wilkinson did not execute the Guaranty—which

contains the jury trial waiver provision—in his personal capacity.  Indeed, Wilkinson expressly

*refused* Capital Centre's request to personally guarantee the Lease.  The agency and tort theories

by which Capital Centre seeks to hold Wilkinson personally liable, moreover, are marked by

significant factual disputes.  *See* DISCUSSION §§ I.A-B, *supra*.  Finally, this Court finds it

particularly noteworthy that fraud is not alleged in this matter.  Indeed, as already noted, Capital

Centre appears to have decided not to assert a fraud claim against Wilkinson.  *See* DISCUSSION §

I.A. n.5, *supra*.  Given this factual context, this Court finds that Capital Centre's contention that

Wilkinson "stand[s] in the shoes of the non-existent guarantor entity" insufficient to establish

that Wilkinson knowingly and intelligently waived his right to a jury trial.  *Cf. Hulsey v. West*,

966 F.2d 579, 581 (10th Cir. 1992) ("Generally, a jury waiver provision in a contract or lease

affects only the rights of the parties to that contract or lease.") (citations omitted).  Accordingly,

Capital Centre's motion to strike Wilkinson's demand for a jury trial is DENIED.

**V.     Motion to Strike.**

Plaintiff moves to strike certain exhibits and factual representations associated with

Defendant's Motion for Summary Judgment.  The basis for striking these materials is that they

are allegedly based either on hearsay or speculation, and therefore cannot be considered by this

Court.  The Court, however, has resolved the parties Cross-Motions for Summary Judgment

without considering the exhibits or factual representations that Plaintiff seeks to strike.  *See*

DISCUSSION §§ I-IV, *supra*.  Accordingly, Plaintiff's Motion to Strike is DENIED as moot.

CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is

GRANTED (with respect to Defendant's affirmative defenses) and DENIED in all other

respects.  Plaintiff's Motion for Summary Judgment is GRANTED (with respect to Defendant's

Counterclaim) and DENIED in all other respects.  Defendant's Motion for Summary Judgment is

DENIED.  Finally, Plaintiff's Motion to Strike is DENIED as moot.  A separate Order and

Judgment follows.


Dated: March 27, 2006                          /s/_____
                                               Richard D. Bennett
                                               United States District Judge