IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAPITAL CENTRE, LLC,                      *

      Plaintiff,                          *

            v.                    *        Civil Action No.: RDB 04-182

DANIEL R. WILKINSON, SR.,                 *

      Defendant.                          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

MEMORANDUM OPINION

Pending before this Court is the Motion for Leave to File an Amended Complaint, filed

by Capital Centre, LLC ("Plaintiff") and opposed by Daniel R. Wilkinson, Sr. ("Defendant").

Plaintiff seeks to amend his Complaint—which already contains causes of action under

principles of agency law (Count I) and negligent misrepresentation (Count II)—by adding a

cause of action for fraud.  The parties' submissions have been reviewed and no hearing is

necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For reasons stated below, Plaintiff's Motion

for Leave to File an Amended Complaint is DENIED.

BACKGROUND

The facts of this case are described in the Memorandum Opinion issued by this Court on

March 27, 2006 and will not be repeated here.  *See* Mem. Opinion, 3/27/06, pp. 3-8.  In that

Opinion, this Court determined that this case would proceed to trial before a jury on Plaintiff's

causes of action under principles of agency law and negligent misrepresentation.  *Id*. at p. 27.

The procedural history of this case is extensive and, as noted in this Court's prior

Opinion, contains a number of discovery disputes.[1]  *See* Mem. Opinion, 3/27/06, pp. 6 & 22-23.

The Scheduling Order in this action established October 12, 2004 as the deadline for amendment

of pleadings.  (*See* Paper No. 13.)  On May 3, 2006, Plaintiff filed its Motion for Leave to File an

Amended Complaint.[2]  (Paper No. 92.)  Trial is scheduled to begin on September 11, 2006.

<u>STANDARD OF REVIEW</u>

As noted above, Plaintiff's Motion for Leave to File an Amended Complaint was filed

*after* the deadline established in the scheduling order for the amendment of pleadings.  As a

result, Plaintiff's motion is governed by Rules 16(b) and 15(a) of the Federal Rules of Civil

Procedure.  *See Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D. Md. 2002) ("Once the

scheduling order's deadline for amendment of the pleadings has passed, a moving party first must

satisfy the good cause standard of Rule 16(b).  If the moving party satisfies Rule 16(b), the

movant then must pass the tests for amendment under 15(a).").

Rule 16(b) provides that "[a] schedule shall not be modified except upon a showing of

good cause and by leave of the district judge . . ."  Fed. R. Civ. P. 16(b).  The "good cause"

standard focuses on the timeliness of the amendment and the reasons for its tardy submission.

*Rassoull*, 209 F.R.D. at 374.  "Although the existence or degree of prejudice to the party

---

[1]    One discovery dispute resulted in sanctions against Defendant.  Specifically, this Court ordered that Defendant "is barred from offering damages evidence with respect to his counterclaim as a result of his failure to comply with the Court's Order of April 26, 2005, that he provide a responsive answer to an interrogatory on counterclaim damages."  (Paper No. 79.)

[2]    In addition to adding a cause of action for fraud, Plaintiff seeks to modify its Complaint as follows: (i) the damages request under Count I is reduced to reflect the fact that Plaintiff was able to mitigate its damages, and (ii) facts relating to Count II are updated to reflect the results of discovery.  (*See* Pl's Mem. p. 20.)  The parties focus almost exclusively on the addition of the cause of action for fraud and do not address Plaintiff's other proposed modifications in significant detail.

opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party was not diligent, the inquiry should end*." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) (quotations omitted; emphasis in original).

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "In fact, such leave 'should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)).  The decision whether to grant leave to amend rests "within the sound discretion of the district court." *Davis v. Virginia Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) (citation omitted).

<u>DISCUSSION</u>

As noted above, the "good cause" standard under Rule 16(b) focuses on two matters: (1) the timeliness of the amendment, and (2) the reasons for its tardy submission.  *Rassoull*, 209 F.R.D. at 374.  With respect to timeliness, there are approximately 6½ months between the time that Plaintiff discovered facts that allegedly justify amending its Complaint and the time that Plaintiff sought to amend its Complaint.[3]  (*See*, *e.g.*, Pl's Mem. p. 18.)  With respect to the

---

[3]     In this case, discovery disputes persisted beyond the October 12, 2004 deadline for amendment of pleadings.  In June 2005, Plaintiff filed a motion to compel discovery with respect to Dandar Enterprises, Inc., the entity that Defendant claims is the proper guarantor of the contract between Plaintiff and Defendant.  (Paper No. 60.)  On August 3, 2005, this Court granted Plaintiff's motion to compel.  (Paper No. 75.)  Consequently, Plaintiff contends that it was only in "October of 2005, while awaiting the Court's decision on the pending cross-motions for summary judgment, [that Plaintiff obtained] facts giving it a good-faith basis to allege fraud against Wilkinson. . . ."  (Pl's Reply p. 18.)

reasons for its tardy submission, Plaintiff contends that:

> The time lag from October of 2005 until May 3, 2006, when Plaintiff
> filed its present motion for leave to amend, was simply a function of
> the fact that the Court did not issue its decision on the cross motions
> for summary judgment until March 27, 2006.

(Pl's Reply p. 18.)  Plaintiff supports this contention with three points.  First, Plaintiff asserts that

this Court erred when resolving the parties' cross-motions for summary judgment.  Specifically,

Plaintiff contends that this Court improperly allowed Defendant to rely on an affirmative defense

that he failed to plead in its Answer.  Second, Plaintiff asserts that it had the right to assume that

this Court would not make such an error.  Finally, Plaintiff argues that had this Court not erred

Plaintiff would have prevailed at the summary judgment stage, thus obviating the need to amend

its Complaint.[4]  (*See*, *e.g.*, Pl's Mem. pp. 17-18; Pl's Reply pp. 18-19.)

As a preliminary matter, it is not clear that October 2005 is the appropriate date from

which to measure Plaintiff's tardiness.  As early as June 2, 2005, Plaintiff indicated in a status

report filed with this Court that it had sufficient basis to add a cause of action for fraud to its

Complaint:

> As the result of the supplemental answer to Plaintiff's Interrogatory
> No. 25 which Defendant Wilkinson provided to Plaintiff on May 11
> and the testimony that Plaintiff elicited from Dandar Enterprises, Inc.
> at its deposition on May 18, *Plaintiff will move to amend its
> complaint* to add Dandar Enterprises, Inc. as an additional defendant
> and add a third count to the complaint against both Defendant
> Wilkinson and Dandar Enterprises, Inc. for fraud.

---

[4]     Plaintiff did not file its Motion for Leave to File an Amended Complaint until five
weeks after receiving this Court's Memorandum Opinion and Order that resolved the parties'
cross-motions for summary judgment.  *See* BACKGROUND, *supra*.

(Paper No. 61 p. 2 (emphasis added).)[5]   Although Plaintiff argues that the October 2005

deposition of Dandar Enterprises, Inc. led to facts that justify the addition of a cause of action for

fraud, various papers filed by Plaintiff establish that the October 2005 deposition did nothing

more than confirm facts that Plaintiff already possessed, *i.e.*, that Defendant was aware that

Dandar Enterprises, Inc. lacked substantial net worth when the guaranty was executed.[6]   As a

result, the record reflects that Plaintiff was prepared to amend its Complaint in June 2005 yet did

not move to do so until May 2006.  This unexplained delay provides sufficient basis for denying

the motion presently before this Court.  *See Marcum*, 163 F.R.D. at 254 ("If [the moving] party

was not diligent, the inquiry should end.").

   Even if this Court assumes that October 2005 is the appropriate date from which to

measure Plaintiff's tardiness, the reasons offered by Plaintiff do not amount to "good cause"

under Rule 16(b).  One of the reasons offered by Plaintiff is that this Court erred in allowing

---

[5]      In its Motion for Leave to File an Amended Complaint, Plaintiff characterizes the statements it made in the June 2 status report as "advis[ing] the Court that it *might* move to amend the complaint" for purposes of adding a cause of action for fraud against Defendant.  (Pl's Mem. p. 5 (emphasis added).)  In the status report itself, however, Plaintiff clearly states that it "*will* move to amend its complaint. . . ."  (Paper No. 61 p. 2 (emphasis added).)

[6]      Plaintiff represents that the October 2005 deposition of Dandar Enterprises, Inc. gave rise to a factual issue regarding Defendant's intentions because testimony obtained at that deposition indicated that "Wilkinson knew [that Dandar Enterprises, Inc.] did not have the substantial net worth that Defendant Wilkinson had represented to Plaintiff that the guarantor had, and which the Lease required, for security-deposit purposes."  (Pl's Mem. pp. 4-5.) However, Plaintiff possessed evidence of these facts before the October 2005 deposition.  (*See* Paper No. 60, filed 6/1/05, p. 7 ("At his January 13, 2005, deposition in this case, Defendant Wilkinson testified that Dandar Enterprises, Inc.'s net worth was negligible in 2003 because it held neither title to the various Dandar entities it managed for Wilkinson nor did it own those entities' equity. . . . Wilkinson, given those facts, was actually engaged in a scheme to defraud Capital Centre. . . ."); Paper No. 81, filed 8/15/05, p. 12 ("Wilkinson admitted at his own deposition that Dandar Enterprises, Inc., which he contends was the intended guarantor, did not have any assets in April and May of 2003.").)

Defendant to assert its "mere misnomer" defense, *i.e.*, that it was a mistake to refer to "Dandar Enterprises, LLC" instead of "Dandar Enterprises, Inc." during precontractual negotiations. Plaintiff supports this contention with a number of specific points. For example, Plaintiff contends that Defendant failed to affirmatively plead this defense in his Answer as required by Rule 8(c) of the Federal Rules of Civil Procedure.[7]  Plaintiff also takes the position that Defendant raised its mere misnomer defense for the first time in a reply brief, and that this Court's Local Rules prevented Plaintiff from filing a response. Finally, Plaintiff asserts that this Court should have recognized that Defendant's mere misnomer defense was improper because it was not affirmatively pled.[8]  (*See, e.g.*, Pl's Mem. p. 17.)

Plaintiff's contention that Defendant disclosed its defense for the first time in a reply brief is unsupported by the record. To begin with, Plaintiff specifically addressed the "mere-misnomer" issue *before* Defendant's reply brief was filed:

> In *Odyssey Travel Centre, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 625 (D. Md. 2003), this Court applied Maryland's law of agency to impose liability on an agent who argued that it created, at worse, a "misnomer" in identifying its principal as "Royal Olympic Cruises," an entity which did not exist, rather than "Royal Olympic Cruises, Ltd."  The agent's purported "mistake" did not protect it from liability on the contract it signed on behalf of the nonexistent "Royal Olympic Cruises." . . . *See Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 652-53 (Md. Ct. Spec. App. 1995).  Per *Odyssey*, even

---

[7]     Fed. R. Civ. P 8(c) provides in relevant part: "In pleading to a preceding pleading, a party shall set forth affirmatively . . . [any] matter constituting an avoidance or affirmative defense."

[8]     Plaintiff also suggests that in October 2005 there was no "litigation value" in amending its Complaint to include a cause of action for fraud.  (Pl's Mem. p. 10.)  This suggestion is inconsistent with Plaintiff's proposed Amended Complaint, which contains a new demand for punitive damages in the amount of $1,000,000 in connection with the cause of action for fraud.  (*See* Am. Compl. ¶ 22.)

if Wilkinson's contention, that he signed the Guaranty, which said
"LLC" by mistake, is credited, Wilkinson is, nonetheless, personally
liable on the guaranty as the guarantor.

(Paper No. 81 pp. 4-5 (citations omitted).)  The above language was filed with this Court on

August 15, 2005.  (*Id*.)  Defendant's reply brief—which allegedly raised the mere misnomer

defense for the first time—was filed on August 29, 2005.  (*See* Paper No. 83.)  Given that

Plaintiff responded to the mere misnomer defense before Defendant allegedly raised that

defense, it is difficult to accept Plaintiff's contention that "for the first and only time in this case,

Defendant asserted [in his reply brief] that his identification of Dandar Enterprises, LLC, a non-

existent, fictitious entity, as the guarantor entity for which he was acting as authorized agent,

was a 'simple misnomer.'" (Pl's Mem. p. 7.)

A close review of Defendant's initial summary judgment papers reveals that Defendant

disclosed its mere misnomer defense before its final reply brief.  According to Plaintiff, the

factual elements of a "colorable mere-misnomer defense" require that a defendant show that (i)

he disclosed the identity of his principal at the time the contract was made; (ii) the parties knew

that they were dealing with a specific corporation; (iii) the identity of the corporate entity

principal must be something that can be ascertained from the instrument itself; and (iv) the

parties proceeded in good faith with knowledge of the intended principal.  (*See* Pl's Mem. p. 12

n.4.)  These elements were disclosed in Defendant's initial memorandum as follows:

- *Defendant disclosed identity of principal when contract was made*:
  "Wilkinson informed Morris the guarantor would be Dandar Enterprises,
  Inc., *see* Wilkinson Dep. at 113-15."  (Paper No. 71 p. 15 (conversation
  allegedly occurred when contract was made).)

- *Parties knew that they were dealing with a specific corporation*:
  "Nowhere in the lease or guaranty did Wilkinson sign in his individual
  capacity.  Further, Wilkinson did not agree to be personally liable for any

7

of ABDJ or Dandar's obligations.  *See* Randolph Aff., Exs. N and O."  (*Id.*
at p. 13.)

- *Identity ascertainable from instrument itself*: "Wilkinson provided
  [Dandar Enterprises, Inc.'s] tax identification number on the guaranty
  (Exh. O)."  (*Id.* at p. 15.)

- *Parties proceeded in good faith with knowledge of intended principal*:
  "Morris was informed Dandar was misidentified on the guaranty, *see*
  Johnson Dep. at 109-12, 132-33."  (*Id.* at 15-16.)

Although Defendant did not use the label "mere-misnomer defense" in his summary judgment

papers, Defendant's memorandum indicates that he was raising this defense.  (*Id.* at 15-16.)  As

noted above, Plaintiff responded to the mere misnomer defense in its reply brief.  In addition,

various papers filed by Plaintiff indicate that Plaintiff was aware of the mere-misnomer defense

at all relevant times.[9]

Plaintiff's suggestion that the local rules prevented him from responding to Defendant's

mere misnomer defense is also flawed.  According to Plaintiff:

> Under Local Rule 105.2(a), no reply was permitted by way of a
> surreply memorandum from Plaintiff to address Defendant's 'mere-
> misnomer' affirmative defense, but Plaintiff assumed that the waiver
> consequence to a defendant of failing to plead an affirmative defense
> was, in any event, apparent and conclusive to defeat this new line of
> attack by the Defendant on Plaintiff's breach-of-contract cause of
> action.

(Pl's Mem. p. 8.)  *See* Local Rule 105.2(a) ("Unless otherwise ordered by the Court, surreply

memoranda are not permitted to be filed.").  There are at least four problems with this argument.

First, as noted above, Defendant articulated the bases for his mere misnomer defense in his

---

[9]      (*See* Paper No. 51, filed 4/14/05, p. 13 (citing *Curtis G. Testerman Co. v. Buck*,
667 A.2d 649 (Md. Ct. Spec. App. 1995), which articulates the mere misnomer defense); Paper
No. 66, filed 7/1/05, p. 16 (same); *see also* Paper No. 81 pp. 3-4 (addressing mere misnomer
defense).)

initial summary judgment papers, thus giving Plaintiff ample time to respond.  Second, Plaintiff

never moved for leave to file a sur-reply.  Third, Plaintiff could have filed a motion to strike the

allegedly improper portion of Defendant's summary judgment papers.[10]  Fourth, Plaintiff's

papers confirm that Plaintiff was aware of a potential problem with Defendant's mere misnomer

defense yet decided not to bring that matter to this Court's attention.[11]  This strategic decision is

one that Plaintiff was of course free to make.  It does not follow from that decision, however,

that Plaintiff was unable to raise the issue with this Court in a timely fashion.[12]

Even if this Court assumes that Defendant was required to affirmatively plead its mere

misnomer defense under Rule 8(c), that defense would not be waived in this case because it was

adequately raised and addressed in the parties' cross-motions for summary judgment.  As the

United States Court of Appeals for the Fourth Circuit has noted, "there is ample authority in this

---

[10]     Given the motion to strike that Plaintiff did file on unrelated factual matters, Plaintiff was aware of this procedural device.  (*See* Paper No. 82.)  *See also Nat'l Credit Union Admin. v. First Union Capital Markets Corp.*, 189 F.R.D. 158, 162-64 (D. Md. 1999) (motion to strike defense is appropriate under certain circumstances).

[11]     (*See* Pl's Mem. p. 8 ("Plaintiff assumed that the waiver consequence to a defendant of failing to plead an affirmative defense was, in any event, apparent and conclusive to defeat this new line of attack by the Defendant on Plaintiff's breach-of-contract cause of action."); Pl's Reply p. 9 ("Plaintiff assumed, and it respectfully submits it had the right to assume, that the Court would recognize this unpleaded affirmative defense for what it was—an affirmative defense that Rule 8(c) required Wilkinson to plead in his answer, that he had failed to plead in his answer, and that he had thereby waived.  Plaintiff was justifiably surprised by the Court's decision to make this unpleaded and untimely affirmative defense available to Wilkinson without a *Goode* motion and despite the long-passed deadline set in the scheduling order for the parties to seek to amend their pleadings.").)

[12]     On the strength of its argument that Defendant waived the mere misnomer defense, Plaintiff appears to request that this Court reconsider its prior Memorandum Opinion and Order.  (*See* Pl's Reply p. 2 ("[This Court] can bar Plaintiff from adding its fraud count to its complaint, but, applying that rule to Wilkinson as well, it must then bar him from relying on his unpleaded affirmative defense. . . .").)  This aspect of Plaintiff's papers is treated as a Motion for Reconsideration and DENIED.

Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999), *abrogation on other grounds recognized by Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004).  In this case, Defendant disclosed the elements of this defense in its initial summary judgment papers, thus giving Plaintiff ample time to respond.  In addition, Plaintiff appears to have made a strategic decision not to raise the issue of waiver in its responsive papers or by filing a motion for leave to file a surreply or a motion to strike.  Accordingly, even if this Court assumes that Defendant was required to affirmatively plead the mere misnomer defense under Rule 8(c), that defense was not waived in this case.[13]

CONCLUSION

For the reasons stated above, this Court finds that Plaintiff has failed to show "good cause" under Fed. R. Civ. P. 16(b).[14]  Accordingly, Plaintiff's Motion for Leave to File an

---

[13]     Plaintiff's argument that "the factual, evidentiary nature of the case changed dramatically by virtue of the late raising of the previously unpleaded affirmative defense" is unconvincing.  (Pl's Reply p. 14.)  The factual disputes in this case regarding what representations Defendant made to Plaintiff during precontractual negotiations, and what Defendant knew when those representations were made, were raised in the parties' cross-motions for summary judgment and, before that, during various discovery disputes.

[14]     As a result, this Court need not address whether Plaintiff has made the required showing under Rule 15(a).  *See Rassoull*, 209 F.R.D. at 373.  However, this Court notes that there have been previous extensions of the Scheduling Order in this matter.  Plaintiff's motion was filed four months prior to the presently scheduled trial date of September 11, 2006.  It is within the discretion of this Court to ultimately ensure that this case finally proceed to trial.

10

Amended Complaint is DENIED.  A separate Order follows.


Dated: August 9, 2006                              /s/_____
                                                   Richard D. Bennett
                                                   United States District Judge